# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>MELVIN HARRIS,<br><br>Defendant | Case No.: 2:19-cr-00202-APG-NJK<br><br>**Order Denying Motions to Vacate Under 28 U.S.C. § 2255 or for Compassionate Release**<br><br>[ECF Nos. 58, 59] |

Melvin Harris pleaded guilty to being a felon in possession of a firearm and was sentenced to 46 months in prison. ECF No. 55. I ordered his sentence to run concurrent with whatever sentence he would later receive on his pending state charge of murder. *Id.* at 2 (referring to Nevada State Court Case No C-19-337823-1). Harris now moves to vacate his sentence under 28 U.S.C. § 2255, arguing his counsel was ineffective in failing to obtain for him a shorter sentence. ECF Nos. 58, 59. In the alternative, he requests compassionate release under 18 U.S.C. § 3582(c)(1)(A). *Id.*[1]

Harris contends his trial counsel was ineffective for two reasons: Harris was led to believe that if he pleaded guilty he would be sentenced to only seven more months in custody, and his counsel failed to ask that his sentence be reduced under United States Sentencing Guideline § 5G1.3(b). *Id.* at 1. Neither of these claims is sufficient to justify vacating his sentence, so I deny his motion.

---

[1] Harris filed the same motion twice on two different days, but attached different exhibits to each motion. *Compare* ECF No. 58 *with* ECF No. 59. I will treat them both as one motion.

I. **Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel under § 2255, Harris must show both that his counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show deficient performance, Harris must show that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quotation omitted). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. In reviewing this claim, I begin with the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Stokley v. Ryan*, 659 F.3d 802, 811 (9th Cir. 2011) (quotation omitted).

To establish prejudice, Harris "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

**A. Harris' guilty plea**

Harris claims he pleaded guilty "solely on the preconception that he would have less than 7 months remaining on his sentence at the time of plea." ECF No. 58 at 1. In order to be valid, a guilty plea "must be an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *McMann v. Richardson*, 397 U.S. 759, 766 (1970) (quotation omitted). Harris' claim is belied by the plea colloquy I conducted with him.

2

Before accepting his plea, I told Harris I did not know at that time what an appropriate sentence would be, that I would need more information to determine an appropriate sentence, but that his sentence could be as long as ten years. ECF No. 66 at 34:13–35:2. Harris confirmed his understanding of this and that his sentence could run concurrent or consecutive to any other pending state or federal charge. *Id.* 35:2–36:2. He also acknowledged that if I sentenced him to something he was not expecting, "that would not give [Harris] the right to withdraw [his] guilty plea." *Id* at 49:1–11. Harris further confirmed that no promises had been made to him other than what was in the plea agreement, that the Assistant United States Attorney's summary of the plea deal was correct, and his attorney had fully explained the terms of the plea deal to him. *Id.* at 37:7–17; 38:1–42:10; 46:14–47:14. He confirmed that he wished to plead guilty under the terms of his plea agreement, with no mention of a sentence of less than seven months.

At his subsequent sentencing hearing, I engaged in a lengthy discussion with Harris about reading the Presentence Investigation Report and the recommended sentence in it. ECF No. 65. Harris repeatedly said he wanted to put this episode behind him and be sentenced immediately. *Id.* at 5-7, 21-22. Again, there was no mention by Harris or anyone else that he had been promised or was expecting a sentence of seven months or less. His current claim is facially incredible.

There is a "presumption that [the defendant's] written plea agreement and his sworn statements during the plea colloquy describe the complete agreement reached between the parties." *United States v. Jackson*, 21 F.4th 1205, 1213 (9th Cir. 2022). "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). *See*

*also Muth v. Fondren,* 676 F.3d 815, 821 (9th Cir. 2012), as amended (May 31, 2012) ("Petitioner's statements at the plea colloquy carry a strong presumption of truth."); *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986) ("[S]tatements made by a criminal defendant contemporaneously with his plea should be accorded great weight.").

There is no factual basis for Harris' claim that his counsel's performance in connection with Harris' guilty plea was deficient or ineffective in any way. I deny that portion of his motion.

**B. <u>Sentencing Guideline § 5G1.3</u>**

Harris next argues his counsel was ineffective for failing "to ask for U.S.S.G. [§] 5G1.3 to be applied to his case and have his sentence reduced by the amount of time that he'd already served, because the 'period of imprisonment will not be credited by the Bureau of Prisons.'" ECF No. 58 at 1. At the time he was sentenced in this case, Harris was awaiting trial in two Nevada state court cases: one charging murder and domestic violence (Nevada State Court Case No. C-19-337823-1) and one charging being a prohibited person in possession of a firearm and fleeing from police (Nevada State Court Case No. C-19-41870-1). The parties believed that if Harris was convicted in those cases, the state court judge would run the sentences concurrent to the sentence in this case. ECF No. 65 at 30-31. As requested by the parties in their plea agreement, I imposed the sentence in this concurrent to whatever sentence would be imposed in the murder case (Nevada State Court Case No. C-19-337823-1). But the parties did not discuss the other state case in their plea agreement or at the sentencing hearing, and the sentence I imposed was silent about that other case. Apparently, Harris later was convicted in the murder case of involuntary manslaughter and sentenced to a 48-month term of imprisonment. ECF No.

4

68-1 at 2. In the other case, he was convicted of fleeing from police and sentenced to a 48-month term of imprisonment, but consecutive to the sentence for involuntary manslaughter. *Id.*

Harris believes his sentence in this case should have been reduced under Sentencing Guideline § 5G1.3. He is partially correct. With regard to the involuntary manslaughter case, § 5G1.3 provides Harris no relief. Under § 5G1.3(c), a federal prison term should be imposed to run concurrent to an anticipated sentence for "another offense that is relevant conduct to the instant offense." Harris' conviction for involuntary manslaughter was not relevant conduct to his charge in this case of possessing a weapon on a different date. Regardless, I imposed his sentence concurrent to his sentence in the involuntary manslaughter case, so there is no error, ineffective assistance, or prejudice to Harris regarding this issue.

Harris' sentence for fleeing from police presents a different issue, however, because that conduct was related to the crime charged in this case. Harris had been pulled over in his car by the police and, during the stop, he drove off. Once he was captured, the police found the weapon that gave rise to this case. So his conviction for fleeing from police may be considered relevant conduct under Sentencing Guideline § 1B1.3(a)(1) because it occurred "during the commission of" his possession of the weapon "or in the course of attempting to avoid detection or responsibility for that offense." Thus, § 5G1.3(c) advises that the sentence in this case should have been made to run concurrent with that state court sentence. Harris' counsel did not request this, it was not contemplated in Harris' plea agreement, and the sentence I imposed did not specify it would run concurrent to the state court sentence for fleeing.

The Bureau of Prisons (BoP) determined that Harris' state sentence for involuntary manslaughter had already expired when I sentenced him (presumably based on credit for time he had served under state custody). *See* ECF No. 68-1. Thus, the sentence in this case could not run

5

concurrent to that discharged sentence. *Id.* Because the judgment in this case was silent as to the other state case for fleeing the police, the BoP started running Harris' federal sentence after he completed his second state sentence, as a consecutive sentence. *Id.*

After considering Harris' present motion, I advised the appropriate BoP personnel that the sentence I imposed should run concurrent with Harris' state court sentence for fleeing, based on § 5G1.3(c). *See* 2/1/2024 email to Kathy Williams attached hereto.[2] The BoP responded that it will treat it as a concurrent sentence and has adjusted its calculation of Harris' release date. *See* 2/6/2024 email from Kathy Williams attached hereto. Harris is now scheduled to expire his sentence on October 5, 2024. *Id.* Based on this correction, Harris has not suffered any prejudice because his sentence is the same now as it would have been if his counsel had requested (and I ordered) that § 5G1.3 applied to both state court sentences. Therefore, Harris cannot prevail on a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 694 (To establish prejudice, Harris "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

Finally, it appears Harris believes the BoP has not properly credited him for time served while in custody at the Nevada Southern Detention Center (NSDC) awaiting trial in this case. ECF No. 59 at 1. Harris was brought to NSDC from Nevada state custody based on a writ. ECF No. 6. Thus, he likely officially remained under state jurisdiction while at NSDC, so his time at NSDC would have been credited towards his state sentence, rather than towards his federal sentence. That may explain why the BoP determined that his sentence for involuntary manslaughter had already expired by the time I sentenced him. Regardless, to the extent Harris

---

[2] The Government has deferred to my decision on how to resolve this issue. *See* ECF No. 68 at 14 n.3.

is otherwise challenging the BoP's calculation of his sentence, that claim must be brought under 28 U.S.C. § 2241. *United States v. Valle*, 168 F.3d 504 (9th Cir. 1999) (unpublished) ("A prisoner's claim of credit for time spent in custody prior to sentencing addresses the execution of his sentence rather than the sentence itself. . . . Such a motion is properly construed as a petition for writ of habeas corpus under 28 U.S.C. § 2241.") (citations omitted). A "petition filed pursuant to § 2241 must be heard in the custodial court." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000). Thus, Harris must bring that motion in the District of Oregon, where he is incarcerated. Because I lack jurisdiction over his motion to the extent it challenges the BoP's calculation of the length of his sentence, I deny that portion of his motion.

### C. Evidentiary Hearing

I need not conduct a hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b); *see also United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984) ("A hearing must be granted unless the movant's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal."); *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982) (stating that a hearing must be held if "the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims").

As discussed above, the records and papers in this case confirm that Harris is not entitled to relief on his § 2255 motion. Thus, no evidentiary hearing is warranted.

## II.  Compassionate Release

Harris moves in the alternative for compassionate release under 18 U.S.C. § 3582(c)(1)(A). That statute authorizes courts to reduce a defendant's prison term, but only

7

"after the defendant has fully exhausted all administrative rights." 18 U.S.C. § 3582(c)(1)(A). It appears Harris requested administrative relief from the BoP on May 1, 2023. ECF Nos. 58 at 4; 60 at 6. The Government does not contend Harris has failed to exhaust his administrative remedies so I will assume for purposes of this order that Harris has satisfied this statutory requirement.

I can grant compassionate release if "extraordinary and compelling reasons warrant [it]." 18 U.S.C. § 3582(c)(1)(A)(i). I must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable," and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission," including the requirement "that the defendant is not a danger to the safety of any other person or to the community." 18 U.S.C. § 3582(c)(1)(A) (referring to U.S.S.G. § 1B1.13).

As discussed above, Harris has no factual basis to support his claims and he has not suffered any prejudice. Nor do his age and alleged health issues warrant compassionate release. But even if Harris' condition can be deemed extraordinary and compelling, I would still deny the motion because he is a danger to the community. 18 U.S.C. § 3553(a); *see also* U.S.S.G. § 1B1.13(a)(2) (court must determine that "the defendant is not a danger to the safety of any other person or to the community"). Harris has a lengthy history of law-breaking and has been incarcerated nearly every year of his life since his late teens. He has convictions for violent crimes, and he committed the crime in this case (felon in possession of a firearm) while he was out on bail for a state murder charge.

Harris does not present extraordinary and compelling reasons to justify releasing him early, and he is a danger to the community. I therefore deny Harris' motion under 18 U.S.C. § 3582(c).

### III. Certificate of Appealability

To appeal this order, Harris must receive a certificate of appealability from a circuit or district judge. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1); 9th Cir. R. 22-1(a). To obtain this certificate, he "must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation omitted). Reasonable jurists could not debate that Harris has failed to show he is entitled to relief. I therefore deny him a certificate of appealability.

### IV. Conclusion

I THEREFORE ORDER that defendant Melvin Harris' motions under 28 U.S.C. § 2255 and 18 U.S.C. 3582(c) **(ECF Nos. 58, 59) are DENIED**.

DATED this 9th day of February, 2024.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

**Andrew Gordon**

| | |
|---|---|
| From: | Williams, Kathy (BOP) |
| Sent: | Tuesday, February 6, 2024 9:02 AM |
| To: | Andrew Gordon |
| Subject: | RE: United States v. Melvin Harris; Federal Register Number 55728-048; Case No 2:19-cr-00202 |

**CAUTION - EXTERNAL:**

Good morning your Honor.

The sentence computation for Mr. Harris has been updated to run the federal sentence and state sentence concurrently, as indicated in your analysis below. His current projected release date is October 5, 2024, via First Step Act (FSA) release. This includes 195 days of FSA credits. This date may change for a variety of reasons, most likely if he earns more FSA credits prior to October 5, 2024. I have sent correspondence to his Unit Manager asking that he advise Mr. Harris of the change to his release date. Please let me know if you need anything else.

Thank you so much.

Kathy Williams
Section Chief, DSCC

**From:** Andrew Gordon
**Sent:** Friday, February 2, 2024 4:00 PM
**To:** Williams, Kathy (BOP)
**Subject:** United States v. Melvin Harris; Federal Register Number 55728-048; Case No 2:19-cr-00202

Good afternoon Ms. Williams.

I am writing in response to your April 7, 2023 letter regarding the Bureau of Prisons' calculation of Mr. Harris' sentence.

At the time I sentenced Mr. Harris in this case, he was awaiting trial in two Nevada state court cases: for murder and domestic violence (Nevada State Court Case No. C-19-337823-1) and for being a prohibited person in possession of a firearm and fleeing from police (Nevada State Court Case No. C-19-41870-1). As requested by the parties in their plea agreement, I imposed my sentence concurrently to whatever sentence would be imposed in the murder case (Nevada State Court Case No. C-19-337823-1). But the parties did not discuss the other state case in their plea agreement and my sentence was silent about that other case. Apparently, Mr. Harris later was convicted in the murder case of involuntary manslaughter and sentenced to a 48-month term of imprisonment. In the other case, he was convicted of fleeing from police and sentenced to a 48-month term of imprisonment consecutively to the sentence for involuntary manslaughter.

1

I believe the sentence I imposed should run concurrently with Mr. Harris' sentence for fleeing from police because his conduct was related to the crime charged in my case. Mr. Harris had been pulled over in his car by the police and, during the stop, he drove off. Once he was captured, the police found the weapon that gave rise to this case. So his conviction for fleeing from police may be considered relevant conduct under U.S.S.G. § 1B1.3(a)(1) because it occurred "during the commission of" his possession of the weapon "or in the course of attempting to avoid detection or responsibility for that offense." Thus, U.S.S.G. § 5G1.3(c) advises that the sentence in this case should have been made to run concurrently with that state court sentence.

Please let me know whether the Bureau of Prisons agrees with my analysis. If so, please let me know what Mr. Harris' new projected release date is. If you disagree with my analysis, I would appreciate hearing your reasons.

Thank you for your time and consideration.



*Andrew P. Gordon*
*U.S. District Judge*
*District Court of Nevada*

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.